**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

IN RE:                                    **10-mc-00268-JAF-BJM**

MIGUEL A. CUADROS-PESQUERA, ESQ

<u>**RESPONSE IN OPPOSITION TO**</u>
<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, ECF NO. 20**</u>

Now comes Respondent, Miguel Cuadros, in response and opposition to the *Magistrate Judge's Report And Recommendation* ("Report"), as set forth in ECF No. 20 of the instant case, and alleges and prays as follows:

<u>**I. INTRODUCTION**</u>

1. The Report makes several findings of fact and recommends disciplinary action accordingly. In some instances, due to the pendency of appeal procedures refrains from recommending disciplinary procedures at this time.

2. In the interest of saving this court time and effort, Respondent will only address the Report's findings where disciplinary action is recommended, without admitting or conceding to the other findings o fact not addressed here specifically, and without waiving any rights or defenses in the event that the court later decides to recommend disciplinary action in the future.

1

3. The Report addresses Respondent's alleged misconduct in his representation of Vicky Rodríguez in Civil Cases Nos. 09-1151 (JP)("Rodríguez I"), 09-2199 (FAB) ("Rodríguez II"), and 10-2228 (DRD) ("Rodríguez IV"), Bankruptcy adversary proceeding Case No. 10-00137 (BKT) ("Rodríguez III"), Bankruptcy Case No. 09-10864 (BKT). As the Report only made disciplinary recommendations regarding Respondent's alleged conduct in Rodríguez I, Rodríguez II, and 09-10864, this opposition will be limited to addressing the findings in those cases leading to a recommendation.

A. **CIVIL CASE NO. 09-1151 (JP) (RODRÍGUEZ I)**

4. At pages 23 – 24 the Report states that it will consider the Complainant's allegations regarding the Respondent's conduct in responding to the defendants' requests for written discovery, as the plaintiffs did not appeal the court's orders on that matter. Plaintiffs' notice of appeal as per ECF No. 270 was filed on March 9, 2010. It was not until April 12, 2010, that the court granted defendants' motion for attorney's fees as set forth in ECF No. 278 (**Appendix at pp.162 – 174**), consequently it was impossible for plaintiffs to appeal from said court's ruling on the earlier date. Plaintiffs did, however, appeal from ECF No. 278 on May 10, 2010, as reflected by ECF No. 284 and 285, and said appeals were dismissed as moot, given that the attorney's fees were vacated, pending the

2

appeal before the 1st Circuit in case 10-1441 (**Appendix at pp.175 – 177**). Consequently, the Report's abstention from any findings of ethics violations in connection with Respondent's conduct regarding electronic discovery or third-party subpoenas, is also proper in regards to Respondent's conduct regarding defendants' requests for written discovery.

5. At page 6 the Report also relies on the court's characterization of plaintiffs' litigation behavior as referenced in ECF No. 101, 102, 223, 227, 230, and 249. Respondent did not author any of the communications or documents referenced in ECF No. 101, 102, 227, 230, and 249 (**Appendix at pp.57; 93; 145; 149**), while he did author or sign ECF No. 223 (**Appendix at pp.133 and 137**).

**B. CIVIL CASE NO. 09-2199 (FAB) (RODRÍGUEZ II)**

6. Plaintiffs Vicky Rodríguez-Torres (Rodríguez), Luis Maldonado-Vaillant, and the Rodríguez-Maldonado conjugal partnership filed the cause of action on November 25th, 2009, a retaliation cause of action brought as an offshoot of an original employment discrimination case, 09-01151-JP. To this date, Rodríguez has not recovered any monies from this action.

**C. BANKRUPTCY CASE NO. 09-10864 (BKT) (CHAPTER 7 PROCEEDING)**

7. Rodríguez, by herself, filed a petition in bankruptcy on December 19th, and scheduled as a bankruptcy asset the underlying cause of action brought under case 09-01151-JP, as

representative of all judicial and administrative claims derived from it, which at the time of the petition included Rodríguez II. All combined causes of action were bundled together and valued as a single contingent claim of $30,000.00, a valuation derived from that assigned by defendants, in an earlier settlement offer of the principal and original cause of action in Rodríguez I.

8. Chapter 7 Trustee examined Rodríguez at the 11 U.S.C. § 341 meeting of the creditors, on February 3rd, 2010, where Rodríguez explained her reasoning behind the scheduling and valuation of Rodríguez I as representative of the bundled derivative causes of action, which included Rodríguez II, making full disclosure to Trustee of both causes of action. Nothing further was discussed at the Meeting regarding the valuation of contingent assets of the bankruptcy estate.

9. An unofficial transcript of the meeting was filed by claimant in Case:09-10864-BKT7 Doc#:97-1 Filed:09/13/10 (**Appendix at pp.1 – 9**). Respondent includes an official transcript (**Appendix at pp.10 – 22**), and its translation (**Appendix at pp.23 – 37**).

10. Rodríguez promptly complied with Chapter 7 Trustee's request that both complaints be forwarded to his attention.

11. On February 15th, 2010, the court in Rodríguez I imposed costs, and subsequently attorney's fees. As the behavior

**4**

imputed to Rodríguez was rooted on events which occurred prior to the bankruptcy petition, Rodríguez accordingly amended her bankruptcy schedules to disclose GDB as a creditor (case **09-bk-10864-BKT7**, **ECF No. 34**). Rodríguez further amended her "creditor matrix" with GDB's information, such that GDB would commence to receive notifications from the bankruptcy court's docket activity.

12. With full knowledge of all of Rodríguez' contingent claims against GDB, and after having received the underlying complaints in both cases, Chapter 7 Trustee designated Rodríguez' estate as that of a "No Asset" case (case **09-bk-10864-BKT7**, **ECF No. 38**).

13. The bankruptcy court on May 21st, 2010, notified all parties of interest, including GDB, that Trustee had filed a report of no distribution, where Trustee did not assign any value to any of the aforementioned causes of action (case **09-bk-10864-BKT7**, **ECF No. 42**). Trustee however did not expressly abandon, or retain for administration, either one of said cases, and Debtor was discharged on May 26th, 2010 (case **09-bk-10864-BKT7**, **ECF No. 44**). Notwithstanding all of the above, Trustee reported Rodríguez II as a contingent asset of unknown value, in the interim report for the period ending on June 30th, 2010 (case **09-bk-10864-BKT7**, **ECF No. 69**).

14. GDB moved to disallow discharge (case **09-bk-10864-BKT7**, **ECF No. 52-1**), Chapter 7 Trustee moved to withdraw the no distribution report (case **09-bk-10864-BKT7**, **ECF No. 57**), and The Bankruptcy Court reopened the case on July 8th, 2010 (case **09-bk-10864-BKT7**, **ECF No. 58**).

15. Rodríguez moved the Bankruptcy Court to compel Trustee to either join this claim as the real party in interest, or alternatively, to abandon the claim for Rodríguez to continue to pursue it on her own, on July 20th, 2010 (case **09-bk-10864-BKT7**, **ECF No. 62**).

16. Rodríguez amended her bankruptcy schedules on August 2nd, 2010, to individually disclose Rodríguez II with a contingent value equal to its face value. Amended schedules reflect GDB as the larger estate creditor at $56,310.37, as well as the entity from which the larger contingent assets would be recovered, at $4,300,000.00 (case **09-bk-10864-BKT7**, **ECF No. 63; ECF No. 63-2; ECF No. 63-3**).

17. Chapter 7 Trustee promptly abandoned Rodríguez II yet a second time on September 15th, 2010 (case **09-bk-10864-BKT7**, **ECF No. 99**).

18. Meanwhile, Rodríguez appeared as co-plaintiff in cause of action brought by her spouse, Luis R. Maldonado-Vaillant, against his then employer Eurobank, on November 21st, 2008, in the Puerto Rico State Superior Court, case number K PE2008-

0872, which pursuant to the liquidation of Eurobank by the FDIC has been removed to the United States District Court for Puerto Rico, case number 10-01700-JAG. The cause of action has a total face value of $ 490,480.00, where Rodríguez interest in the lawsuit has a face value of $75,000.00.

19. Chapter 7 Trustee chose not to make an appearance in case 10-01700-JAG even upon full knowledge of its existence, and consequently remained disinterested in said cause of action as a bankruptcy estate asset.

20. To this date, Rodríguez has not recovered any monies from the state case.

## II. DISCOVERY CONDUCT IN RODRÍGUEZ I AND II

### A. RODRÍGUEZ I

21. Respondent cannot be held accountable for purported actions of his before he first filed his appearance, or in subsequent acts performed by a fellow appearing attorney, as laid out by the fact pattern outlined above.

### III. NON-DISCLOSURE OF THE CHAPTER 7 PROCEEDING TO THE TRIBUNAL

22. The Report at page 30 establishes that the Respondent violated Model Rules 1.1 and 8.4 by co-counsel Meléndez' non-disclosure to either court of the proceeding pending in the other.

7

23. Although not scheduled independently, the existence of the cause of action was discussed with Chapter 7 Trustee, and the complaint was made available to him. Chapter 7 Trustee showed no interest in Rodriguez I, or in Rodriguez II. Where, as here, the existence of Rodriguez I Rodriguez II were disclosed to Chapter 7 Trustee prior to the discharge, it has been held that such disclosure negates the possibility of any conclusion that Respondent convinced the Bankruptcy Court that this claim did not exist.

24. Having disclosed Rodriguez I Rodriguez II to Chapter 7 Trustee, at worst, any failure to individually schedule the claim is to be considered inadvertent, as Respondent had no compelling motive to conceal the contingent claim. GDB, at once, simultaneously represented the largest contingent asset in the bankruptcy estate, as well as the largest creditor. Rodríguez could not possibly seek to collect against GDB in the current case, while at the same time concealing the collection from GDB, to avoid paying the contingent liability GDB has against Rodríguez in the bankruptcy estate. Any recovery would not have resulted in a windfall to Rodríguez.

25. Under such circumstances, any failure to disclose should be considered inadvertent. *In re Coastal Plains, Inc.,* 179 F.3d 197, 206-07 (5th Cir., 1999).

26. Courts have also allowed debtors to pursue personal injury claims, even when such causes of action had been unscheduled, but openly disclosed to the Trustee at the § 341 meeting. *In re Szymanski*, 189 B.R. 5 (N.D. Ill., 1995). Even where a debtor's failure to schedule an asset has been decidedly egregious, courts have not pursued extreme, draconian measures and have instead allowed Trustee to reopen Chapter 7 case in order to administer the unscheduled cause of action. *Jeffrey v. Desmond*, 70 F.3d 183 (1st Cir., 1995).

27. Courts have also found that even when a tort claim not listed in the Chapter 7 debtor's bankruptcy, there is no need to resort to judicial estoppel against the debtor, since the cause of action is property of the estate. Accordingly, the threshold issue is not whether to apply an estoppel but, whether Trustee or the debtor is the real party in interest. At worst, it deemed debtor to be a "gatecrasher", trying to prosecute a claim that belongs to his estate in bankruptcy. *Biesek v. Soo Line R. Co.*, 440 F.3d 410, 413 (7th Cir., 2006).

28. Although Chapter 7 Trustee, with full knowledge of Rodríguez II, designated Rodríguez' estate as that of a "No Asset" case (case 09-bk-10864-BKT7, ECF No. 38), and filed a report of no distribution which effectively abandoned this claim back to Rodríguez to prosecute, he later withdrew the report and had the bankruptcy case reopened.

29. Rodríguez was not judicially estopped from pursuing this claim during or after bankruptcy. *Alloy Metal Wire Works, Inc. v. Congress Financial Corp.*, 95 B.R. 340 (E.D. Pa., 1989).

30. Rodríguez, as the party sought to be estopped must have obtained relief from GDB or any other adversary in the bankruptcy proceeding. Absent such relief, the party cannot be estopped. *Scarano v. Central R. Co. of N. J.*, 203 F.2d 510, 513 (3rd Cir., 1953).

31. Further, as in the present case, when a bankruptcy case is reopened to include a purportedly undisclosed claim, the debtor has not been estopped from pursuing the claims on her own. *Lampl v. Smith*, 169 B.R. 432, 435 (D. Colo., 1994).

32. The bankruptcy case which once had been closed, was subsequently reopened at the behest of GDB and still remains so. Therefore there is nothing in the record to suggest that Rodríguez has benefited from the proceeding. Absent from the record is any showing of GDB having suffered prejudice. For instance, the award of costs and attorney's fees for which GDB became a bankruptcy creditor has been subsequently dismissed and vacated, as laid out in the factual background above. Therefore, GDB has no further interest to protect. *Kurchack v. Life Ins. Co. of North America*, 725 F. Supp. 2d 855, 858 (D. Ariz., 2010).

33. In any event, Rodríguez II contains prayers for injunctive relief, which are not made part of the bankruptcy estate, and which Rodríguez has been free to pursue at all times relevant to this complaint. Rodríguez II further has two co-plaintiffs, whose interests have never been affected by Rodríguez bankruptcy proceeding, and which they have been free to pursue at all times relevant to this complaint. Rodríguez II also contains prayers for relied for monetary compensation for pain and suffering, and medical expenses. Rodríguez, regardless of the bankruptcy filing and its progress, retains a pecuniary interest in any pain and suffering and reimbursable medical expenses that she incurs post-petition. Therefore, her pursuing those interests as part of the instant complaint in no way is inconsistent with the bankruptcy proceeding. *In re Sobiech*, 125 B.R. 110, 113 (Bankr. S.D. N.Y. 1991).

34. Had Rodríguez' in fact concealed Rodríguez II in bankruptcy, as soon as the Chapter 7 Trustee abandoned this case for the second time, all rights to prosecute this case vested back to Rodríguez.

35. As the representative of the estate in bankruptcy, and pursuant to 11 U.S.C. § 704, it was incumbent upon Chapter 7 Trustee to investigate Debtor's financial affairs, including making a judgment call as to the value – and materiality - of the bankruptcy estate assets. Said duty is carried out by

performing a valuation on bankruptcy estate assets according to their relative worth, utility, or perceived importance, depending on the circumstances of the case, and on the proposed disposition of said asset, which might include its ultimate abandonment.

36. Specifically, valuation depends on the degree of optimism or pessimism of Chapter 7 Trustee, regarding the stability, continuity, and the degree of risk involved in pursuing and administering the asset. Chapter 7 Trustee's judgment in asset valuation matters is to be afforded deference by the courts. *In re Moorhead Corp.*, 208 B.R. 87 (1st Cir. BAP, 1997).

37. Thus, when Chapter 7 Trustee valued Rodríguez II as not having any feasible recovery value for the estate on or before May 21st, 2010, he was within the entire and proper scope of his discretion. Chapter 7 Trustee was also within his discretion when he valued case 09-01151-JP at $30,000.00 on his June 30th, 2010, interim report which he issued on August 9th, 2010, which incidentally is the same valuation proposed and affirmed by Rodríguez originally in her bankruptcy schedules. Chapter 7 Trustee was further within his discretion when he valued Rodríguez II as having "unknown value" in the interim report.

38. Rodríguez, therefore, reasonably relied on the above judgment exercised for the above valuation assessments. That Rodríguez

did not amend her schedules to individually and specifically schedule a cause of action which Chapter 7 Trustee chose to ignore altogether cannot seriously be considered a bad faith omission designed to defraud creditors.

39. Chapter 7 Trustee's failure to exercise the above rights in regards to this case does not mean that the suit itself needs to be irremediably enjoined or abated. ***DiMaio Family Pizza & Luncheonette, Inc. v. The Charter Oak Fire Ins. Co., 448 F.3d 460, 463 (1st Cir., 20006)***.

40. It is undisputed that GDB became aware of the bankruptcy proceeding at issue when Rodríguez herself in good faith amended her bankruptcy schedules as early as February, 2010, and added GDB to the creditor database for purposes of notification of all docket activity.

41. Courts have also recognized that a good-faith exception to the operation of judicial estoppel may operate in limited circumstances. ***Graupner v. Town of Brookfield, 450 F.Supp.2d 119, 128 (D.Mass., 2006)***. As in this case, it is appropriate to resist application of judicial estoppel when a party's prior position was based, at worst, on inadvertence or mistake. ***New Hampshire v. Maine, 532 U.S. 742, 753 (2001)***. Failure to comply with the Bankruptcy Code's disclosure duty is inadvertent when a party has no motive for their

concealment. ***Barger v. City of Cartersville, Georgia, 348 F.3d 1289, 1295 (11th Cir., 2003)***.

42. Rodríguez at all times relevant to this complaint has been nowhere close to converting the contingent asset at issue, such that there has not been any liquidity or funds available to distribute to creditors. Rodríguez cannot possibly collect and dissipate any contingent assets, neither through deliberate intention, nor by chance.

43. Rodríguez, at no point in time before or since the bankruptcy petition, has had even the remote possibility of deriving any economic or litigation benefit or advantage, by not scheduling the un-liquidated, contingent asset represented by Rodríguez II, which Chapter 7 Trustee led Rodríguez to believe was superfluous and having no certain value, in all respects pertaining to the bankruptcy estate.

44. Careless or inadvertent disclosures are not the equivalent of deliberate manipulation. ***Stallings v. Hussmann Corp., 447 F.3d 1041, 1049 (8th Cir.2006)***.

45. As general rule, in bankruptcy, for a debtor or counsel to be liable due to a misstatement of fact, said statement has to be material to the bankruptcy case. ***In re Duncan, 562 F.3d 688, 695 (5th Cir., 2009)***.

46. Omission from debtor's schedules is "material," as required if it bears relationship to debtor's business transactions or

estate, or if it concerns the discovery of assets, business dealings, or existence and disposition of debtor's property. **11 U.S.C.A. § 727(d)(1)**; _**In re Darby**_**, 376 B.R. 534 (Bankr. E.D. Tex., 2007).**

47. With respect to the purported omissions or otherwise incorrect information contained in this bankruptcy petition, a distinction must be made based upon the scope of said mistake; where the mistake is "immaterial", and merely just technical or inadvertent in nature, a presumption of fraud, or liability for debtor or counsel must fail. _**Pelletier v. Donald**_**, 240 B.R. 141, 146 (1st Cir., BAP 1999).** Omissions or mistakes in a bankruptcy petition are "material", only if they would have had an appreciable effect on the administration of the estate. _**Dawson v. Cutts**_**, 233 B.R. 563, 572 (1999).**

48. Specifically, valuation depends on the degree of optimism or pessimism of Chapter 7 Trustee, regarding the stability, continuity, and the degree of risk involved in pursuing and administering the asset. Chapter 7 Trustee's judgment in asset valuation matters is to be afforded deference by the courts. _**In re Moorhead Corp.**_**, 208 B.R. 87 (1st Cir. BAP, 1997).**

49. Thus, when Chapter 7 Trustee valued case 09-01151-JP and all its progeny as not having any feasible recovery value for the estate on or before May 21st, 2010, he was within the entire and proper scope of his discretion. Chapter 7 Trustee was also

within his discretion when he valued case 09-01151-JP at $30,000.00 on his <u>June 30th, 2010</u>, interim report which he issued on <u>August 9th, 2010</u>, which incidentally is the same valuation proposed and affirmed by Debtor originally in her bankruptcy schedules. Chapter 7 Trustee was further within his discretion when he valued Rodríguez II as having "***unknown value***" in the interim report.

50. Rodríguez and co-counsel Meléndez, therefore, could have reasonably relied on the above judgment exercised for the above valuation assessments. That Debtor did not amend her schedules to individually and specifically schedule a cause of action which Chapter 7 Trustee chose to ignore altogether cannot seriously be considered a bad faith omission designed to defraud creditors.

51. For liability to accrue to Rodríguez or co-counsel Meléndez, the discovery of the existence of the purportedly undisclosed asset, once known, would have led the Trustee to react differently. ***<u>In re Nielsen</u>, 383 F.3d 922, 925 (9th Cir., 2004)***. Likewise, it must be established that Debtor's failure to report was done fraudulently, by demonstrating that failure to list the asset at issue seriously mislead the Chapter 7 Trustee. ***<u>Matter of Yonikus</u>, 974 F.2d 901, 905 (7th Cir., 1992)***.

52. For claimants to be able to persuade this Court that Rodríguez and co-counsel Meléndez withheld material facts to

the Bankruptcy court, they must allege firstly that the entire discharge was prompted solely by the purported errors or omissions, and that such discharge would not have been granted but for Debtor's purported fraud. ***Lawrence National Bank v. Edmonds,*** *924 F.2d 176, 180 (10th Cir., 1991)*.

53. To prevail on the instant claim, claimants have to surpass the hurdle of being able to prove by a preponderance of the evidence that Debtor's statement under oath was propounded with fraudulent intent, and that such statement was material to the bankruptcy case. <u>See</u>: ***In re Tully, 818 F.2d 106, 112 (1st Cir., 1987); In re Duncan, 562 F.3d 688, 695 (5th Cir., 2009); In re Sholdra,*** *249 F.3d 380, 382 (5th Cir., 2001)*.

54. Debtor at all times relevant to this complaint has been nowhere close to converting the contingent asset at issue, such that there has not been any liquidity or funds available to distribute to creditors. Debtor cannot possibly collect and dissipate any contingent assets, neither through deliberate intention, nor by chance.

55. Debtor, at no point in time before or since the bankruptcy petition, has had even the remote possibility of deriving any economic or litigation benefit or advantage, by not scheduling the un-liquidated, contingent asset at issue, which Chapter 7 Trustee led Debtor to believe was superfluous and having no

**17**

certain value, in all respects pertaining to the bankruptcy estate.

56. Therefore, the draconian measure sought by the Report in the present complaint, is unwarranted and inapplicable to the present case. It can't be seriously argued that Debtors' discharge was attained exclusively by not scheduling Rodríguez II, when all throughout the present petition it has been consistently ignored by Chapter 7 Trustee. Any inadvertence or mistake committed by Debtor in failing to schedule the relatively insignificant and immaterial contingent asset has, after all, been contributed to by Chapter 7 Trustees' acts and omissions,  and are therefore reasonable, such that they do not amount to an instance of fraud, or even bad faith.

57. Since there is absence of deliberate dishonesty and of any serious prejudice to judicial proceedings or the position of the opposing party, a determination of fraud does not apply to the present case.

58. Debtor so far has made a sufficient showing that at all times she has rendered full assistance and open disclosure to Chapter 7 Trustee to allow him to properly determine the bankruptcy estate's true financial condition, and further, at all times answered truthfully, intelligently, connectedly, and fully as her own knowledge has permitted. Debtor's testimony and disclosures appear to have been made to Chapter 7

Trustees' satisfaction, as well, as he failed to raise any exceptions, objections, or render any disclosed transaction as questionable.

59. Where as in the present case, claimants have been unable to propose any evidence of intent on behalf of the Debtor to mislead the court, and much less, shown how the Debtor stands to reap any advantage by purportedly failing to timely disclose continent assets, this Court must deny such prayers for a determination of Respondent liability. Claimant does not even make a faint attempt to explain to this Court how is it more advantageous and beneficial to include in the bankruptcy schedules a case which is in a more advanced stage of the litigation process, 09-01151-JP, and closer in liquidity to being of any benefit to the estate, while at the same time concealing a case of a null contingent value, and with a lower probability of being converted to a bankruptcy asset.

60. In short, claimant has not shown any effort by Debtor to gain an unfair advantage in her bankruptcy case by failing to make a timely disclosure of the litigation at issue. Courts are often understanding of a single omission or error resulting from innocent mistake, absent, as in the present case, instances of multiple inaccuracies or falsehoods which perhaps could rise to the level of reckless indifference to the truth, or a functional equivalent of intent to deceive. ***In re Logan***

*Medical Foundation, Inc., 346 B.R. 184, 189 (Bankr. S.D.W.Va., 2006).*

61.Where, as in the present case, Debtor has no motive to conceal a contingent asset from the bankruptcy schedules, such failure is considered inadvertent, and therefore does not meet the level of severity required for disciplinary sanctions against Respondent. *Barger v. City of Cartersville, Georgia, 348 F.3d 1289, 1295 (11th Cir., 2003); In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir., 1999).* Careless or inadvertent disclosures, even if they were deemed to have been made by Debtor in the present case, are not the equivalent of a deliberate manipulation. *Stallings v. Hussmann Corp., 447 F.3d 1041, 1049 (8th Cir., 2006).*

## IV. ACCOUNTABILITY FOR ETHICS VIOLATIONS OF CO-COUNSEL

62.At page 32 the Report found, on account of co-counsel Meléndez' conduct, that Respondent violated Model Rule 5.1(c)(2) of Professional Conduct:

> "*A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if: (2) the lawyer is a partner or has comparable managerial authority in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.*".

63.The Report in effect, in so many words, constructs Model Rule 5.1(c)(2) as imposing vicarious liability, and creates an agency relationship between Respondent and co-counsel

Meléndez. Such a finding has no basis on fact, on the record, nor does it have any legal basis.

**A. <u>VICARIOUS LIABILITY</u>**

64. Sanctioning statutes and rules typically impose liability exclusively on the signer of a paper, or to the signer's client, but never vicariously to other appearing attorneys for the derelictions of the signing co-counsel. _Pavelic & LeFlore v. Marvel Entertainment Group_, 493 U.S. 120 (1989). "_Just as the requirement of signature is imposed upon the individual, we think the recited import and consequences of signature run as to him_". **_Id., at *124_**; _Rentz v. Dynasty Apparel Industries, Inc._, 556 F.3d 389, 396-399 (6th Cir., 2009). Other courts have held accordingly: "_. . . sanctions may be imposed only upon individual attorneys who have signed sanctioned papers_". **_Mariani v. Doctors Associates, Inc._, 983 F.2d 5, 9 (1st Cir., 1993)**.

65. Courts have further held that an attorney's typewritten name on a pleading is not a signature for purposes of subjecting him to sanctions. _Triad Systems Corp. v. Southeastern Exp. Co._, 64 F.3d 1330, 1339 (9th Cir., 1995); that a lawyer whose name appeared on an offending document only in typewritten form had not signed the paper for purposes of imposing sanctions _White v. American Airlines_, 915 F.2d 1414, 1426-1427 (10th Cir., 1990); and, that a typewritten name is not

sufficient for imposing sanctions . *Giebelhaus v. Spindrift Yachts*, 938 F.2d 962, 966 (9th Cir., 1991).

66. As laid out above by Respondent's citations to the record, the Report imposes liability based on papers not filed, authored, or signed by Respondent. The Report's only factual basis is Respondent's name appearing on the letterhead of communications, or below the signature and address of papers filed by co-counsel Meléndez.

**B. AGENCY RELATIONSHIP**

67. An agent's conduct may subject a principal to liability: while acting with actual or apparent authority; or principal ratifies conduct which is tortious; or principal is negligent in selecting, supervising, or controlling the agent. *Restatement (Third) Of Agency § 7.03 (2010)*.

68. Courts typically have required that for a principal to be found vicariously liable for fraudulent misrepresentations made by an agent, that it be reasonable to infer that such acts occurred within the scope of an employment relationship. **_Rodi v. Southern New England School Of Law_, 389 F.3d 5, 13 (1st Cir., 2004).** And not just any degree of employment relationship, but one where agent has a managerial or influential position within principal. **_CEH, Inc. v. F/V Seafarer_, 70 F.3d 694, 704-705 (1st Cir., 1995).**

69. As to ratification, courts have required that there be a showing of manifestation of assent indicative of consent by the principal. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 59 (1st Cir., 2002)*.

70. The Report fails in all of the above respects, as it does not establish that an employment relationship existed between Respondent and co-counsel Meléndez, let alone that Respondent exerted any form of control or supervision over co-counsel Meléndez. The Report fails to establish a causal link, or any link at all, between the purported offending conduct carried out by co-counsel Meléndez, and acts ratification or assent by Respondent.

## V. CONCLUSSION

71. At worst, what the Report characterizes as misstatements by co-counsel Meléndez, if any where in fact committed at all, were innocent enough to not warrant the sanctions sought by the court. The Report does show that co-counsel Meléndez was in any way culpably careless in discharging his duty as an attorney. Sanctioning rules and statutes are not strict liability provisions. *Young v. City of Providence, 404 F3d 33, 39 (1st Cir., 2005)*. This court under the circumstances of this complaint cannot reasonably find that co-counsel Meléndez intended to deceive. *Id, at *41*. To find fault, co-counsel Meléndez must have been, at the very least, culpably careless

to commit a violation. *Roger Edwards, LLC v. Fiddes & Son Ltd.*, 437 F3d 140, 142 (2006).

72. Any purported misstatements by co-counsel Meléndez, given the record herewithin cited, have been inconsequential and should be disregarded as de minimis. *Oliveri v. Thompsom*, 803 F2d 1265 (2nd Cir., 1986).

73. Having failed to establish responsibility on co-counsel Meléndez, there cannot be any responsibility established on Respondent. And even if co-counsel Meléndez where to be found liable by this court, the Report does not establish any factual or legal basis on which to base any form of responsibility on Respondent.

## VI. PRAYER FOR RELIEF

74. For all of the above, Respondent prays that this Honorable Court dismiss the present complaint, and deny the recommendations as set forth in ECF No. 20.

Submitted in New York City, this 16th day of June, 2011.

**S/William E. Meléndez Menéndez**
William E. Meléndez Menéndez
USDC PR No. 226902
Attorney for Respondent

410 Park Avenue 15th Floor, Suite # 1223
New York, New York 10022
Tel. (718) 725-7387
We.Melendez@e-Lex.us